**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

**WESTPORT INSURANCE CORPORATION,**
a Missouri Corporation,

      **Plaintiff,**

v.                No. 2:07-cv-02522-JPM-cgc

**WILKES & MCHUGH, P.A.,** a Florida
Professional Association; **JAMES L. WILKES,
II,** a Florida citizen; **TIMOTHY C. MCHUGH,**
a California citizen; and **DEBBIE HOWARD** and
**LORA L. NEWSON,** Tennessee citizens on behalf
of themselves and all others similarly situated,

      **Defendants.**

---

**ORDER GRANTING IN PART AND DENYING IN PART WESTPORT INSURANCE
CORPORATION'S RENEWED MOTION FOR PROTECTIVE ORDER**

**ORDER GRANTING IN PART AND DENYING IN PART WILKES & MCHUGH P.A.'S
MOTION TO COMPEL**

---

Before the Court are Plaintiff Westport Insurance Corporation's ("Westport") Renewed Motion for Protective Order (D.E. #114) and Defendant Wilkes & McHugh P.A.'s ("Wilkes & McHugh") Motion to Compel (D.E. #119). These motions were referred to United States Magistrate Judge Charmiane G. Claxton for determination. (D.E. #115, #120). For the reasons set forth herein, Westport's Renewed Motion for Protective Order is GRANTED IN PART AND DENIED IN PART, and Wilkes & McHugh's Motion to Compel is GRANTED IN PART AND DENIED IN PART.

1

## I. Introduction

This case arises from Westport's Complaint for Declaratory Judgment, which seeks that the Court determine whether Westport has a duty to defend or duty to indemnify Defendants in the underlying legal malpractice litigation. See Howard v. Wilkes & McHugh, et al., No. 2:06-cv-02833 (W.D. Tenn. Aug. 9, 2007). The Complaint, as amended on April 22, 2008, (D.E. #49) ("First Amended Complaint"), requests a declaratory judgment that there is no coverage under the policy because the underlying complaint is not a claim, does not allege any wrongful act, falls within the policy's prior knowledge exclusion, and falls within the policy's intentional acts exclusion. Further, the First Amended Complaint asserts that there is no coverage under the policy for punitive damages, for the return of contingency fees collected by the insured, for declaratory relief, or for temporary or permanent injunctive relief.

On May 29, 2008, Wilkes & McHugh filed its Answer and Counter-Complaint, which set forth counterclaims of breach of contract, violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, breach of fiduciary duty, and collusion. (D.E. #50). Subsequently, Wilkes & McHugh amended its Counter-Complaint (D.E. # 56) ("First Amended Counter-Complaint") to allege additional factual bases for the counterclaims.

The parties initially filed cross-motions regarding discovery on August 13, 2008, while Westport's Motion to Dismiss and Motion for Summary Judgment were pending. The District Court denied the motions without prejudice, advising the parties that they could renew the motions, if necessary, after the ruling on the Motion for Summary Judgment. On October 2, 2008, the District Court denied Westport's Motion to Dismiss as moot (D.E. #99), and on February 20, 2009, the District Court denied in part and granted in part Westport's Motion for Summary Judgment (D.E.

#105). Specifically, the District Court found that Westport has a duty to defend Wilkes & McHugh and that summary judgment was not appropriate as to Westport's duty to indemnify. In light of the District Court's resolution of the dispositive motions, the parties renewed the Motion to Compel and Motion for Protective Order, which are currently before the Court. On June 4, 2009, United States Magistrate Judge Tu M. Pham held a hearing on the instant motions, and on June 9, 2009, the case along with the referred motions were reassigned to United States Magistrate Judge Charmiane G. Claxton.[1]

## II. Analysis

Rule 26 of the Federal Rules of Civil Procedure provides as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The scope of discovery is both broad and liberal, Hickman v. Taylor, 329 U.S. 495, 507 (1947), and is within the discretion of the trial court, Lewis v. ABC Business Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. See Fed. R. Civ. P. 26(c).

Under Rule 34 of the Federal Rules of Civil Procedure, a party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party to inspect, copy, test, or sample any designated documents, electronically stored information, or tangible things. Fed.

---

[1] Along with the motions, responses, replies, and exhibits filed in the record of this case, the Court relied upon the recording of the hearing on the instant motions before Magistrate Judge Pham following the transfer of this case to Magistrate Judge Claxton.

R. Civ. P.34(a). If a party fails to permit inspection of documents as requested under Rule 34, a party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37(a)(3)(A).

Under Rule 26(c) of the Federal Rules of Civil Procedure, a party may move for a protective order to prohibit certain discovery. Fed. R. Civ. P. 26(c)(1). The Court may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including the following: (1) forbidding the disclosure or discovery, (2) specifying terms, including time and place, for the disclosure or discovery, (3) prescribing a discovery method other than the one selected by the party seeking the discovery, (4) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters, (4) designate the persons who may be present while the discovery is conducted. Id.

In the instant motions, the parties cross-motions address whether Requests for Production #6, #9, #10, #11, #14, #15, #16, #17, #18, #19, and #21 seek discoverable information. Additionally, Wilkes & McHugh's Motion to Compel asserts that Westport must produce a 30(b)(6) representative and Kathleen E. Brown for depositions.

### *1. Request for Production #6*

Request for Production #6 seeks "[a]ll documents or communications of any type pertaining to, connected or arising out of any claim or complaint from an insured's defense counsel of interference with legal research with legal research or non-payment of legal fees or expenses, including Westlaw, in the defense of a legal malpractice claim against any of your insureds in the United States of America."

At the hearing on the instant motions before United States Magistrate Judge Tu M. Pham,

Judge Pham advised the parties that the instant request for production was "clearly overbroad." Although Judge Pham did not issue a ruling upon this issue, the Court agrees with Magistrate Judge Pham's conclusion that the request is overly broad because the scope of the request is unlimited, particularly with respect to the lack of any time restrictions. Accordingly, Wilkes & McHugh's Motion to Compel is DENIED and Westport's Motion for Protective Order is GRANTED as to Request for Production #6.

### 2. *Request for Production #9*

Request for Production #9 seeks "[a]ll joint defense agreements, Mary Carter agreements, memoranda of understanding, correspondence, email, notes, memoranda, or tangible evidence of any type pertaining to, connected with or arising out of any and all communications by and between Swiss Re's Westport Insurance Corporation, its attorneys, adjusters and representatives, and Frank Watson and Bill Burns or anyone claiming to represent Frank Watson or Bill Burns."[2] Westport contends that the request seeks irrelevant evidence and asserts that "[t]here are simply no such agreements or memoranda of understanding or any other documents or correspondence evidencing collusion or such alliance between Westport and [the underlying Plaintiffs]." Pl.'s Resp. to Motion to Compel at 12. Wilkes & McHugh contends that the request seeks evidence of bad faith and collusion between Westport's counsel and the underlying Plaintiffs.

In Wilkes & McHugh's Amended Counterclaim, they allege that Westport "has worked and colluded with Counsel for Plaintiffs in the underlying suit in an attempt to defeat coverage," which Wilkes & McHugh contends evidences bad faith and breach of fiduciary duty. Am. Compl. ¶¶ 33-34. Request for Production #9 seeks discovery on the issue of the alleged collusion as set forth in

---

[2] According to Wilkes & McHugh's Motion to Compel, Frank Watson and Bill Burns are plaintiffs' counsel in the underlying Howard v. Wilkes & McHugh litigation.

Wilkes & McHugh's counterclaims. The discovery requested directly relates to the counterclaims filed by Wilkes & McHugh and appears reasonably calculated to lead to the discovery of admissible evidence either supporting or refuting Wilkes & McHugh's counterclaims. As such, Wilkes & McHugh's Motion to Compel is GRANTED and Plaintiff's Motion for Protective Order is DENIED as to Request for Production #9.

### 3. *Request for Production #10, #11, #14, #17, #18*, *#19*

Next, the Court will consider several similar requests for production that seek discovery regarding Westport's practices and handling of other policyholders' claims. Request for Production #10 seeks "[a]ll documents, correspondence, memoranda, or tangible evidence of any type arising out of or connected with in any way any complaint, allegation or claim by any insured of Swiss Re's Westport Insurance Corporation involving a lawyer's malpractice policy and pertaining to or connected with any claim or allegation of bad faith, failure to defend, breach of contract or failure to provide coverage within the preceding five years." Westport contends that the request is overbroad and seeks irrelevant and undiscoverable information. Wilkes & McHugh responds that the request seeks discoverable information as to their counterclaims.

Request for Production #11 seeks "[a]ll correspondence, emails, communications, memoranda, documents, or tangible evidence of any type by and between Westport Insurance Corporation, their attorneys, employees, or representatives and Swiss Re, their attorneys, their employees, or their representatives, within the preceding five years that pertain to, arises out of or is connected with in any way to payment by Swiss Re or any of its affiliated companies any sums on any nursing home claims wherein Wilkes & McHugh, P.A. were involved in any way as Plaintiff's counsel."

6

Request for Production #14 seeks "[a]ll tolling agreements entered into by or on behalf of Westport Insurance Corporation and/or Swiss Re and/or any of their affiliated companies and any insured sued for professional negligence which agreement was entered into within the preceding five years."

Request for Production #17 seeks "[a]ll lawsuits and/or complaints of any type filed and/or served upon Westport Insurance Corporation and/or Swiss Re and/or any of their affiliated companies alleging breach of contract, bad faith, or any other such claim that arises out of an alleged failure to defend or provide coverage for an uninsured within the preceding five years."

Request for Production #18 seeks "[a]ll denials of coverage and/or reservation of rights letter sent to any insured under a professional liability policy within the preceding five years."

Request for Production #19 seeks "[b]oard minutes, executive committee meetings, all surveys, studies, reports, documents of any type pertaining to or in any way arising out of any review of or efforts to reduce legal malpractice claims expense, including but not limited to defense attorney expenses."

At the hearing on the instant motion held before United States Magistrate Judge Tu M. Pham, Wilkes & McHugh relied upon Grange Mutual Ins. Co. v. Trude, 151 S.W.3d 803 (Ky. 2004) and Parkdale America, LLC v. Travelers Casualty and Surety Co. of America, No. 3:06CV78-R, 2007 WL 3237720 (W.D.N.C. Oct. 30, 2007). In Grange, the discovery requests focused on bad faith claims, and the insurer argued that the information is "irrelevant because they cover claims against adjusters other that those involved in this case." 151 S.W.3d at 811-12. The Grange court held that "[i]t is enough for us to note that discovery of information and documents related to similar claims involving other adjusters could reveal a pattern of bad faith conduct on the part of [the insurer]. This

would certainly be relevant to [the plaintiff's] bad faith claim." Id. at 812 (citing Kentucky Farm Bureau Mutual Ins. Co. v. Troxell, 959 S.W.2d 82, 85-86 (Ky. 1997)).

Likewise, in Parkdale, the plaintiffs sought identification of any occasion after a certain date that the insurer paid or denied a claim under the antitrust coverage endorsement at issue in that case, and the plaintiffs requested sufficient identifying information to allow for a public records search in relation to the claims. 2007 WL 3237720, at *3. The Court held that the information that the Parkdale plaintiffs sough was reasonably calculated to lead to the discovery of admissible evidence. Id. Specifically, the Court stated that "evidence of the [insurer's] practices concerning and its treatment of similar claims, if any, could be relevant and material to the [plaintiff's] bad faith and/or unfair and deceptive trade practices claims." Id.

In response, Westport relied upon Moses v. States Farm Mut. Auto Ins. Co., 104 F.R.D. 55,57 (N.D. Ga. 1984), Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA, 2007 WL 3376831 (S.D. Ohio 2007), and Clark Equip. Co. v. Liberty Mut. Ins. Co., 1995 WL 867344 (Del. Super. 1995) for the proposition that discovery concerning the treatment of similar claims of other policyholders is not discoverable. In Moses, plaintiffs propounded interrogatories regarding similar no-fault claims. 104 F.R.D. at 57. The United States District Court for the Northern District of Georgia concluded that the requests were not relevant to the issues in the case, nor were they likely to lead to admissible evidence. Id. Specifically, the court concluded that the "issues in this case are limited to [defendant's] conduct regarding Plaintiff's claim for insurance benefits and to the adequacy of [defendant's] reasons for that conduct. Defendant's conduct regarding the insurance claims of others is of no consequence to this case." Id.

In Retail Ventures, plaintiffs sought "information or documents concerning claims by other

8

policyholders for coverage for computer fraud losses," as were specifically at issue in the case. 2007 WL 3376831, at *5. The court concluded that the requests were overbroad and unduly burdensome, especially considering the "problems inherent in the involuntary production of documents in which non-parties may hold valid privileges." Id. (citing Leski v. Federal Ins. Co., 129 F.R.D. 99, 106 n.3 (D.N.J. 1989)). Moreover, the Royal Ventures court was "not persuaded that information related to other policyholders' claims and complaints is relevant." Id. (citations omitted). Accordingly, the Royal Ventures court determined that the requested information was not reasonably calculated to lead to the discovery of admissible evidence and that the burden and expense of responding to the extensive discovery request outweighs its likely benefit. Id. (citing Fed. R. Civ. P. 26(b)(1), (2)(C)(i), (iii)).

In Clark, the plaintiffs propounded two requests for production seeking documents related to other policyholders' environmental and delayed manifestation claims. 1995 WL 867344, at *1. The defendants in Clark submitted extensive affidavits to "describe the massive burden involving time, effort, and expense, as well as the disruption of business operations, that would be imposed upon defendants if discovery of other policyholder claims would be allowed." Id. The Clark court concluded that, "[a]side from the burden, the recent Delaware decisions offer several reasons for denying discovery. First, the existence of so many variables make the possibility of relevance too remote. Second, the manner in which the claims of other policyholders are handled would created extended mini-trials. Third, rational limits must be set on the extent of discovery in complex litigation of this nature, and other policyholder discovery would exceed those limits." Id. at *3. Quoting Leski, the Clark court reasoned that "[t]o compel the production of the files of other insureds not only involves enormous inconvenience and management difficulties, but also entails

9

a frightening potential for spawning unbearable side litigation which . . . defeats the purpose and spirit of the discovery rules themselves." Id. (citing Leski, 129 F.R.D. at 106). Accordingly, the Clark court denied the plaintiff's request for discovery regarding other policyholder claims.

The Tennessee Consumer Protection Act specifically states that it prohibits "unfair or deceptive acts *or practices.*" Tenn. Code Ann. § 47-18-104(a). Thus, Wilkes & McHugh should be entitled to reasonable discovery on Westport's practices as to this claim and other claims. Further, the Court notes that Requests for Production #10, #11, #14, #17, #18, and #19 are all limited in scope to the preceding five years, which the Court finds is a reasonable limitation to avoid an excessive burden upon Westport. Accordingly, the Court is persuaded that discovery as to Westport's handling of other policyholder claims is reasonably calculated to lead to admissible evidence. As such, Wilkes & McHugh's Motion to Compel is GRANTED and Westport's Motion for Protective Order is DENIED as to Requests for Production #10, #11, #14, #17, #18, and #19.

### 6. *Request for Production #15*

Request for Production #15 seeks "[a]ll correspondence, notes, memoranda, or documents of any type pertaining to or connected with all communications by and between Stefan Passantino or P. Michael Freed and Frank Watson or Bill Burns that pertains to Wilkes & McHugh, P.A., James Wilkes, II, and/or Timothy C. McHugh and any Tennessee attorney employed by or associated with Wilkes & McHugh." Wilkes & McHugh contends that the discovery is reasonably calculated to lead to the discovery of admissible evidence on their counterclaims, while Westport generally contends that "communications with claimant's counsel are not discoverable" and specifically asserts that no documents exist evidencing any collusion or bad faith.

Upon review, the Court finds that Request for Production #15 is reasonably calculated to lead

10

to the discovery of admissible evidence as to whether any unlawful activity occurred. Although Westport summarily states that such communications are not discoverable, Westport has not relied upon authority to support that position. Accordingly, Wilkes & McHugh's Motion to Compel is GRANTED and Westport's Motion for Protective Order is DENIED as to Request for Production #15.

### 7.  Request for Production #16

Request for Production #16 seeks "[a]ll documents or tangible evidence of any type relied upon by you to support your contention that it is ethical and/or legal to direct the legal research activities of defense counsel in the underlying matter, that is ethical to prohibit a lawyer from defending your insured with the resource of Westlaw, and that [it] is ethical to demand defense counsel in the underlying claim purchase at their expense billing software." Westport objects to this request on the basis that it seeks irrelevant documents related to their general claims practices and that the request "potentially encompasses documents protected by the work product doctrine or the attorney-client privilege." Pl.'s Resp. to Mot. to Compel at 14.

As previously discussed, the Court finds that discovery as to Westport's general claims practices is reasonably calculated to lead to the discovery of admissible evidence. Further, Westport has not filed a privilege log as required by Rule 26(b)(5) of the Federal Rules of Civil Procedure, and thus Westport has not properly asserted any privilege with respect to this request. Accordingly, the Court finds that Wilkes & McHugh's Motion to Compel is GRANTED and Westport's Motion for Protective Order is DENIED as to Request for Production #16.

### 11.  Request for Production #21

Request for Production #21 seeks "[a]ll internal documents, notes, emails or tangible

evidence of any type that refer to or mention in any way Jim Wilkes, Tim McHugh and/or Wilkes & McHugh." Wilkes & McHugh contends that Westport's internal documents are highly relevant to the determination of whether any bad faith conduct occurred, and Wilkes & McHugh contends that Westport's admission that "thousands of documents" are responsive to the request only heightens the relevance "[i]n light of the adversarial relationship between Swiss Re and Wilkes & McHugh." Defs.' Mot. to Compel at 18. Westport states that the request is constructed "so broadly that it is not limited in time or scope, and it includes documents protected by attorney-client privilege, and/or the work product doctrine." Pl.'s Resp. to Mot. to Compel at 13. Westport states that, because it and its affiliated entities have previously insured nursing homes that Wilkes & McHugh have sued on behalf of clients, many documents included in this request would regard entirely unrelated matters. Id.

Upon review of this request, the Court is persuaded by the reasoning in Sabratek Liquidating LLC v. KPMG, No. 01C9582, 2002 WL 31520993 (N.D. Ill. Nov. 13, 2002). In Sabratek, the plaintiffs requested "copies of all documents that refer to Sabratek that [defendant] has in its possession." Id. at *4. In response, the defendant stated that the request was overly broad and sought irrelevant material. The Sabratek court concluded that the plaintiffs have "cast its net so wide that it is certain to catch documents not relevant to any claim or defense in the instant litigation" and that plaintiffs have "offered no case law in support of such a broad request." Id. As such, the court determined that the request was overbroad.

Likewise, the Court finds that Request for Production #21 has no limit in scope and would require Westport to produce extensive documents that relate only to other matters and have no relation to the instant case. Accordingly, Wilkes & McHugh's Motion to Compel is DENIED and

12

Westport's Motion for Protective Order is GRANTED as to Request for Production #12.

### *12. Rule 30(b)(6) Deposition*

Finally, Wilkes & McHugh contend that Westport "refuses" to produce either a 30(b)(6) witness or Kathleen E. Brown for deposition. Westport responds that it has "never stated that it refuses to provide witnesses for deposition," but that its "position has been that it would be in all Parties' best interests to delay the noticed depositions until the Court rules on the pending discovery motions." Defs.' Resp. at 15. Thus, Westport affirms that it "will provide witnesses for deposition to testify as to non-privileged matters within the scope of discovery as defined by this Court." Id.

In light of Westport's affirmation, the Court finds that Wilkes & McHugh's Motion to Compel the production of either a 30(b)(6) witness or Kathleen E. Brown is unripe. Thus, the Court DENIES Wilkes & McHugh's Motion to Compel as to the issue of these depositions without prejudice to refile at such time as the issue is ripe.

### III.  Conclusion

For the reasons set forth herein, Wilkes & McHugh's Motion to Compel is GRANTED as to Requests for Production #9, #10, #11, #14, #15, #16, #17, #18, and #19 and DENIED as to Request for Production #6, #21, and as to the deposition requests. Westport's Motion for Protective Order is GRANTED as to Requests for Production #6 and #21, and Westport is ORDERED to submit a draft protective order to the Court within eleven days of the entry of this order.

**IT IS SO ORDERED** this 23rd day of October, 2009.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE
